1
2
3
4
5
6
7                               UNITED STATES DISTRICT COURT

8                                    DISTRICT OF NEVADA

9                                          * * *

10    UNITED STATES OF AMERICA,           )
                                          )
11             Plaintiff,                 )         2:06-CR-020-KJD-(RJJ)
                                          )
12                                        )         REPORT &   RECOMMENDATION
      vs.                                 )            OF UNITED STATES
13                                        )           MAGISTRATE JUDGE
                                          )         (Defendant's Motion to Suppress (#16))
14                                        )
      TONY SOUNDARA,                      )
15                                        )
               Defendant.                 )
16    _____)

17          This matter came before the Court for a hearing on Defendant Tony Soundara's Motion to

18    Suppress (#16).  The Court has considered the Motion (#16), the Government's Response and

19    Opposition (#19), the Defendant's Reply (#20), supplemental briefs (#28, 30) and the testimony and

20    evidence presented at the evidentiary hearing.

21                                       **BACKGROUND**

22          On October 29, 2005, at approximately 8:15 p.m., Officers L. Turner, T. Bachman, and J.

23    Harper of the Las Vegas Metropolitan Police Department (LVMPD) patrolled the parking lot of the

24    Motel 6 located at 4125 Boulder Highway, Las Vegas, NV 89121.  At the time, Officers Turner and

25    Bachman were members of the LVMPD Southwest Area Command Problem Solving Unit (PSU),

26    organized specifically to patrol high crime areas.  Officer Harper was riding along with the officers

27    to observe PSU activities. The Motel 6 parking lot is considered a "hot zone" due to the high volume

28    of reported crime, specifically drug and prostitution-related crimes and property crimes. It is located

in a larger crime area referred to as the "Boulder Corridor," which extends down the Boulder Highway from Russell Road to Charleston Avenue.  All three officers were in plainclothes and driving an unmarked white minivan.

While patrolling the Motel 6 parking lot, Officer Turner noticed a large sedan extending part-way out of a parking space.  This vehicle had the engine running with the brake lights and headlights on.  A Hispanic man was leaning into the front passenger side  window of the vehicle, apparently speaking with the female driver.  The man's head, neck, upper torso, and hands were inside the vehicle.  Officer Turner testified that based on these observations, her law enforcement training and 8 years of police service, 3 of which were with PSU in this area, there existed a reasonable suspicion of criminal activity, specifically hand-to-hand drug activity or the solicitation of prostitution.  From this, Officer Turner decided to perform an investigatory stop of the male and driver.

Officers Turner, Bachman and Harper initiated the investigatory stop by approaching the vehicle and identifying themselves verbally, and with badges, as police officers.  Officer Bachman approached the female driver while Officer Turner approached the male from the rear passenger side of the vehicle, and Officer Harper approached the man from the front passenger side.  Upon their approach, the man pulled himself out of the vehicle window and faced Officer Turner, who recognized him immediately as the defendant, Tony "Tone" Soundara, a felon whom she had previously contacted in the area.  As Officer Turner proceeded to approach, the Defendant appeared nervous and began stepping backward, in the direction of Officer Harper. During this time Officer Turner commanded the Defendant to raise his hands where she could see him.  As Soundara complied, raising his hands above his head,  his shirt rose revealing the butt of a gun in his left, front pant-pocket.  Upon noticing the firearm, Officer Turner alerted the other officers of the weapon by shouting, "Gun! Gun! Gun!"  Officer Harper removed a loaded Smith & Wesson .38 special caliber revolver from the defendant's front pocket and took the defendant into custody. The Defendant was placed under arrest and charged with being a Felon in Possession of a Firearm and Carrying a Concealed Weapon.

On January 18, 2006, a federal grand jury indicted Defendant Tony Soundara and charged

1  him with violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Felon in Possession of a Firearm.  The

2  Defendant has filed a motion to suppress the evidence obtained as a result of his seizure, claiming

3  that  his Fourth Amendment rights were violated because the police lacked reasonable suspicion to

4  conduct the investigatory stop.

5  **DISCUSSION**

6       Defendant Soundara moves the Court to suppress all evidence obtained as a result of the

7  seizure and search of his person on two grounds, 1) that there did not exist reasonable suspicion

8  to support the officers' investigatory stop, and 2) that the investigatory stop escalated to a de

9  facto arrest without probable cause when Officer Turner took the defendant into custody.

10 Soundara claims that the facts of this case do not support a finding of reasonable suspicion to

11 justify the investigatory stop, let alone establish the necessary probable cause to maintain the

12 subsequent de facto arrest.  According to Soundara, the only facts that may be argued to support

13 an investigatory stop, the high crime nature of the area and the behavior of the defendant, fail to

14 encourage an investigatory stop.

15 **I. Reasonable Suspicion**

16      The Fourth Amendment requires an investigatory stop to be founded on an "objective

17 justification."  U.S. v. Sokolow, 490 U.S. 1, 7 (1989).  An objective justification for a stop exists

18 where there is "reasonable suspicion supported by articulable facts that criminal activity may be

19 afoot."  Id.; see United States v. Arvizu, 534 U.S. 266, 273 (2002).  "[I]nchoate and

20 unparticularized" hunches do not create reasonable suspicion.  Terry v. Ohio, 392 U.S. 1, 27

21 (1968). When analyzing whether an officer acted on the basis of reasonable suspicion, as

22 opposed to an unsubstantiated hunch, the court must view the "totality of the circumstances" in

23 light of an officer's training and experience.  U.S. v. Cortez, 449 U.S. 411, 417-18 (1981).   The

24 court may find reasonable suspicion where the totality of the circumstances "yield[s] a

25 particularized suspicion" that the individual being stopped is engaged in wrongdoing.  Cortez. at

26 418.  When there is conduct that may be explained as both innocent or suspicious of criminal

27 activity, the "determination that reasonable suspicion exists . . . need not rule out the possibility

28

1   of innocent conduct." U.S. v. Arvizu, 534 U.S. 266, 277 (2002); see Illinois v. Wardlow, 528

2   U.S. 119, 125 (2000).

3       The facts in the current case support the existence of reasonable suspicion to perform an

4   investigatory stop.  Officer Turner stated that her decision to stop Soundara was based on the

5   following factors: (1) the events took place in the Boulder Corridor, a high crime area known for

6   drug and prostitution-related crimes; (2) the Motel 6 parking lot is a "hot zone" for crime, even

7   inside the Boulder Corridor, prompting hotel management to request an additional police

8   presence; (3) the position of the vehicle extending out of the parking space with the engine

9   running and the brake lights and headlights lit was indicative of typical of hand-to-hand drug

10  transaction or solicitation of prostitution, as was (4) the Defendant's body position with his head,

11  neck, upper torso, and hands inside the vehicle through the passenger's window.  These factors,

12  when viewed in their totality and in conjunction with the testimony of an experienced police

13  officer, establish the necessary reasonable suspicion to believe that criminal activity may be

14  afoot.

15      In this case, viewing the defendant's behavior in the totality of the circumstances is key to

16  determinating reasonable suspicion.  The Defendant contends that his conduct, leaning into the

17  car of an acquaintance,  it is not an unusual or suspicious activity.  Soundara asserts that it is

18  common for people to talk in a parking lot, just as he was on October 29, 2005, and absent any

19  additional evidence, such as the officers witnessing an exchange of some sort, there does not

20  exist grounds for reasonable suspicion.   In support of his position, Soundara analogizes the facts

21  of his case to those of  Brown v. Texas, 443 U.S. 47 (1979).  In Brown, the defendant was

22  stopped after officers observed him walking away from another person in the alley of a high

23  crime area.  Despite the officer's testimony that the situation looked suspicious the Supreme

24  Court held that there was not reasonable suspicion to stop the defendant based on the facts given

25  and the officer's acknowledgment that the primary purpose of the stop was to ascertain the

26  identity of the defendant.  443 U.S. at 52.

27       The defendant's contention that there exists an innocent explanation for his conduct does

28

- 4 -

1   not prohibit a finding of reasonable cause.  Lawful and innocent behavior may be used to support

2   reasonable suspicion.  Sokolow, 490 U.S. at 9.  Officer Turner was not required to rule out all

3   innocent explanations for the defendant's behavior.  Given the high rate of drug and prostitution-

4   related crime in the area, the request of the Motel 6 management for an increased police presence

5   to prevent crime, and the fact that the defendant's behavior of leaning into a car that was not fully

6   parked in a space was typical of criminal activity, establishes reasonable suspicion.  Furthermore,

7   the case at bar is factually distinguishable from Brown in the following ways, 1)  Soundara was

8   stopped because of suspicion he had committed a crime, not because he "looked suspicious" and

9   had never been seen in the area, 2) the defendant's behavior was seen as indicative of criminal

10  activity that mirrored typical drug or prostitution-related crimes in the high crime area.  In

11  Brown, the officers testified that the defendant was stopped because he looked suspicious and

12  had not been seen in the neighborhood before.  Brown, 443 U.S. at 49.  Also, in Brown the

13  officers, despite referencing the area's high crime rate, did not claim to suspect the defendant of

14  misconduct and arrested the defendant for failing to identify himself when asked.  Id.  There was

15  reasonable suspicion to support the investigatory stop of the Defendant.

16  **II. De Facto Arrest**

17      The defendant's second argument is that when the defendant was taken into custody an

18  unlawful de facto arrest occurred.  Soundara argues that the escalation from an investigative stop

19  to taking him into custody occurred as a result of his nervous demeanor upon withdrawing from

20  the vehicle and not based upon the requisite probable cause.  As evidence of this de facto arrest,

21  the defendant cites to Officer Turner's Arrest Report and Declaration of Arrest.  (Def. Supp.

22  Briefing #28, Ex. A & B).  Both the Report and Declaration state that as the defendant was taken

23  into custody, Officer Turner observed the butt of a gun in his front pant-pocket.  Soundara argues

24  that because the report evidences that the defendant was in "custody" before the firearm was

25  discovered and after he became nervous, a de facto arrest occurred.

26      "Whether an arrest has occurred depends on all the surrounding circumstances, including

27  the extent to which liberty of movement is curtailed and the type of force or authority employed."

28

1  U.S. v. Robertson, 833 F.2d 777, 780 (1987).  An investigatory stop is characterized as "a brief

2  stop, interrogation and, under the proper circumstances, a brief check for weapons" beyond which

3  "an arrest occurs, for which probable cause is required." Id. Even complete restriction of an

4  individual's liberty of movement will not convert a Terry stop into an arrest, if restraint is

5  warranted under the circumstances. U.S. v. Bautista, 684 F.2d 1286, 1289 (1982).

6          In this case, the defendant was not taken into custody until after there was probable cause

7  for his arrest.  Officers Turner, Harper and Bachman displayed the proper degree of authority for

8  an investigative stop.  The officers announced themselves as LVMPD officers as they approached

9  the defendant with their badges displayed.  No weapons were drawn and there was no aggressive

10  movement on the part of the officers indicating that arrest was imminent.  Soundara's claim that

11  his liberty was curtailed by the surrounding officers fails. The circumstances, when viewed in

12  their entirety, describe an investigatory stop based on reasonable suspicion during which the

13  defendant exhibited nervous behavior and began backing away from Officer Turner, who

14  recognized him as a felon.  As the defendant backed away, he raised his hands as directed by

15  Officer Turner, and in the process revealed the butt of a firearm in his front pant-pocket, to which

16  Officer Turner alerted the other officers.  As Officer Turner alerted to the gun,  the defendant

17  backed into Officer Harper who immediately seized the weapon and took the defendant into

18  custody.  Probable cause to arrest the defendant existed from the moment Officer Turner saw the

19  butt of the gun.  No de facto arrest occurred because the investigatory stop became an arrest based

20  on probable cause.

21                              **RECOMMENDATION**

22          Based on the foregoing and good cause appearing therefore,

23          IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that the

24  Defendant's Motion to Suppress (#16) be **DENIED**.

25                                  **NOTICE**

26          Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in

27  writing and filed with the Clerk of the Court within ten (10) days.  The Supreme Court has held that

28

                                    - 6 -

1   the courts of appeal may determine that an appeal has been waived due to the failure to file objections

2   within the specified time.  Thomas v. Arn, 474 U.S. 140, 142 (1985).  This circuit has also held that

3   (1) failure to file objections within the specified time and (2) failure to properly address and brief the

4   objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues

5   from the order of the District Court.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991); Britt v.

6   Simi Valley United Sch. Dist., 708 F.2d 452, 454 (9th Cir. 1983).

7         DATED this   15th   day of June, 2006.

8

9

10  _____

11  ROBERT J. JOHNSTON
    United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28